MICHAEL JAY GREEN AND ASSOCIATES, INC.
MICHAEL JAY GREEN    4451
- *AND* -
LAW OFFICE OF PETER C. HSIEH
PETER C. HSIEH    3204
Davies Pacific Center
841 Bishop Street, Suite 2201
Honolulu, Hawaii  96813
Telephone:  (808) 521-3336
Facsimile:  (808) 566-0347
Email:  michael@michaeljaygreen.com
          hsiehlaw808@gmail.com

Attorneys for Plaintiffs
SHANAH A. BRODY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| SHANAH A. BRODY,<br><br>       Plaintiff,<br><br>  v.<br><br>HAWAIIAN AIRLINES, INC., and HAWAIIAN HOLDINGS, INC.,<br><br>       Defendants. | CIVIL NO. _____<br><br>COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS |

**COMPLAINT**

Plaintiff SHANAH A. BRODY, by and through her attorneys, Michael Jay Green and Peter C. Hsieh, for a complaint against the above-named Defendants, allege and aver as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction of the claims against the defendants pursuant to 28 U.S.C. §§ 1331, 1343 and 1367 and pendant jurisdiction of Plaintiff's state claims against the defendants.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because (1) the defendants are corporate residents of the State in this district and (2) a substantial part of the acts, omissions, and/or events giving rise to Plaintiff's injuries and claims occurred in this judicial district.

## PARTIES

3. Plaintiff SHANAH A. BRODY ("Plaintiff") is, and was at all times relevant herein, a citizen of the United States and resident of Clark County, state of Washington.

4. Defendant HAWAIIAN AIRLINES, INC., is, and was at all relevant times herein, a Delaware corporation, is a subsidiary of Hawaiian Holdings, Inc., registered and licensed to conduct business in the state of Hawaii.

5. Defendant HAWAIIAN HOLDINGS, INC. is, and was at all relevant times herein, a Delaware corporation, is the parent company of Hawaiian Airlines, Inc., registered and licensed to conduct business in the state of Hawaii.

6. Hawaiian Airlines, Inc., and Hawaiian Holdings, Inc., are hereinafter collectively referred to as "Hawaiian" or "Defendants".

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff exhausted her administrative remedies by timely filing a charge of religious discrimination and disability discrimination against Hawaiian under Title VII of the Civil Rights Act of 1964 with the Equal Employment Opportunity Commission ("EEOC") and the Hawaii Civil Rights Commission ("HCRC") within 180 days of the discriminatory action. Plaintiff received a Notice of Dismissal and Right to Sue from the EEOC and the HCRC on September 26, 2022, and September 27, 2022, respectively. Plaintiff files this complaint within 90 days of her receipt of the Notices.

## INTRODUCTION

8. This suit is not about Hawaiian's right to implement a COVID-19 vaccine mandate requiring its employees to get vaccinated. Rather, it is about Hawaiian's failure to carry out the mandate in a lawful and nondiscriminatory manner in accordance with the laws under Title VII and/or ADA.

9. Not only did Hawaiian resort to coercion and intimidation to force the vaccine mandate down the employees' proverbial throats, Hawaiian trampled on the rights of employees who sought exemptions by denying nearly every application for exemptions regardless of the employee's religious belief or medical reason not to get the vaccine.

10. Worse, after it ended its Vaccine Mandate in September 2022, Hawaiian allowed some unvaccinated employees (most, if not all, with less seniority than Plaintiff) to get their jobs back without penalty while others were told they had to reapply without credit for their seniority.

11. Plaintiff brings this suit to seek accountability for Hawaiian's unlawful conduct.

## FACTUAL ALLEGATIONS

12. In the last two and a half years since the COVID-19 pandemic, the people of the state of Hawaii saw a world none had ever seen before. The first cases of COVID-19 were identified in China in December 2019. The coronavirus outbreak grew into a global pandemic.

13. The medical and scientific communities were unprepared and scrambled to find answers. Pharmaceutical companies raced to develop a vaccine. Moderna and Pfizer were first to market with their newly-developed vaccines, followed by Johnson and Johnson. These companies were able to deliver the vaccine in record time, because the U.S. Food and Drug Administration ("FDA") allowed them to accelerate through the testing and approval process.

14. Ordinarily, after the initial development of the vaccine in the laboratories, all vaccines must go through three phases of clinical trials to make sure they are safe and effective. The FDA then reviews the findings from the clinical

trials before deciding whether to grant authorization or approval for its use. Normally, the vaccine clinical trials have to go through three phases, which are performed one at a time, which could take months to complete.

15. As a result of the short-cut granted by the FDA, what normally would take years to approve took just a few months. The speed by which the vaccines were developed and delivered caused widespread concerns regarding the vaccines' safety and efficacy and possible side effects. In short, many people were skeptical and refused to get the COVID-19 vaccination.

16. The first doses of COVID-19 vaccine administered in Hawaii on December 14, 2020. The pandemic made people fearful and paranoid. The fear of infection worsened emotion, cognition, and behavioral responses. That fear was heightened by constant, relentless barrage of daily news reports of infection and death rates.

17. The state of Hawaii acted on that fear to impose the strictest of prohibitions, mandating a strict 14-day quarantine; social distancing and masking; nightly curfews; travel restrictions, limitations on number of people in restaurants and family gatherings at home; closure of beaches; moratorium on evictions; proof of vaccination; closure of schools; and many other restrictions.

18. Hawaiian adopted the State's mindset and came up with its own vaccine mandate, ordering its 7,000 employees to take the COVID-19 vaccine, with

termination as a consequence of refusal to vaccinate.

19. On May 11, 2021, Hawaiian implemented a "COVID-19 vaccination support program" which required its employees to provide proof of vaccination by August 29, 2021, which was later extended to January 4, 2022.

20. On August 9, 2021 Hawaiian implemented a COVID-19 vaccine mandate requiring all 7,000 of its employees to take the COVID-19 vaccination by November 1, 2021 ("Vaccine Mandate"). The deadline was later extended through January 4, 2022 pursuant to its Transition Period Testing Program ("TPTP"). Under the TPTP, employees who did not get vaccinated as of November 1, 2021, were allowed to continue working through January 4, 2022, but were subjected to a temporary COVID-19 testing protocol, ostensibly to provide unvaccinated employees additional time to evaluate whether to get vaccinated.

21. A number of Hawaiian employees were taken aback by the Vaccine Mandate who viewed it as harsh and unreasonable, upset that they were being forced to get the vaccination.

22. Hawaiian attempted to mollify the employees by offering those who refused to get vaccinated an opportunity to take a leave of absence without pay up to 12 months, starting on January 5, 2022 ("12-Month Unpaid LOA").

23. The 12-Month Unpaid LOA, which Hawaiian euphemistically called "reasonable accommodation", was in reality a suspension without pay.

24. The 12-Month Unpaid LOA is essentially a "take it or leave it offer" giving Hawaiian employees a Hobson's choice: get vaccinated or get fired.

25. The folly of Hawaiian's vaccine mandate was driven home when the Fifth Circuit Court of Appeals struck down a similar vaccine mandate by United Airlines, Inc., in *Sambrano v. United Airlines, Inc.*, 2022 U.S. App. LEXIS 4347 ((5th Cir. February 17, 2022). There, the plaintiffs, United Airlines employees, filed for a preliminary injunction to stop United from imposing its vaccine mandate. The district court denied the injunction, and the plaintiffs appealed. The Fifth Circuit reversed the district court's conclusion that plaintiffs had not demonstrated irreparable injury absent an injunction. In concurring in the denial of rehearing *en banc*, Judge James C. Ho stated, poignantly:

> Being placed on indefinite unpaid leave because your employer doesn't like your religious beliefs is obviously an adverse employment action and an actionable claim under Title VII of the Civil Rights Act of 1964. And you've obviously suffered irreparable injury when you're forced to violate your faith in order to get your job back. The injury would be entirely reparable by money damages if it was just about a loss of money. But it's not. It's about a loss of faith. And it's about a crisis of conscience. You're being coerced into sacrificing your faith in order to keep your job. No measure of damages makes sense in this scenario. To keep your job, you must violate your faith. How much money would it take for you to sell out your faith?

*Id.*, 45 F.4th at 879 (5th Cir. 2022).

26. On January 13, 2022, the U.S. Supreme Court struck down OSHA's vaccine mandate, stating that the mandate was a "blunt instrument" drawing no "distinctions based on industry or risk of exposure to COVID-19" and that the "universal risk" from COVID-19 is "no different from the day-to-day dangers that all face from crime, air pollution, or any number of communicable diseases[] . . . ." *National Federation of Independent Business, et al. v. Department of Labor, et al.*; 595 U.S. ___ (2022).

27. Since the release of its Vaccine Mandate in August of 2021, Hawaiian has denied nearly every application for exemptions regardless of the employee's religious belief or medical reason not to get the vaccine.

28. Hawaiian failed and/or refused in good faith to provide reasonable accommodations to Plaintiff. Agreeing to the 12-Month Unpaid LOA was the only way they could return to their job if they were vaccinated. Refusal to accept the offer resulted in immediate termination. Hawaiian's 12-Month Unpaid LOA was not a good faith effort to accommodate religious conflicts.

29. In January 2021, several hundred Hawaiian employees remained unvaccinated. Some employees requested and were granted a 12-Month Unpaid LOA. Employees who elected the 12-Month Unpaid LOA were able to maintain health insurance through the end of January 2022 (or until the end of the month in which they began the 12-Month Unpaid LOA. Some unionized employees who did

not request a 12-Month Unpaid LOA were held out of service ("HOS") pending hearings on their union grievances, but continued to receive company health benefits. Non-union employees who did not apply for the 12-Month Unpaid LOA or were not granted leave were terminated effective January 5, 2022.

30. Plaintiff was hired by Hawaiian as a Flight Attendant based in the Honolulu Station on February 11, 2000.

31. On September 30, 2021, Plaintiff submitted her COVID-19 Vaccination Religious Accommodation Request Form.

32. On October 14, 2021, Hawaiian denied Plaintiff's request for religious exemption.

33. Plaintiff refused to apply for the 12-Month Unpaid LOA.

34. On December 14, 2021, Hawaiian terminated Plaintiff's employment.

35. On September 12, 2022, 13 months to the date, Hawaiian ended its Vaccine Mandate that required its 7,000 employees be vaccinated.

36. Hawaiian was the last airline to lift the COVID-19 vaccination mandate.

37. The ending of the mandate included 200 employees who had declined to take the COVID-19 vaccination and went on unpaid leave from Hawaiian under its 12-Month Unpaid LOA. Hawaiian announced that all are eligible to return

to work when the new policy goes into effect on October 1, 2022.

38. Hawaiian's decision to end its Vaccine Mandate and take all employees back excludes those employees who were fired because they refused to vaccinate after their requests for religious and/or medical accommodations were denied, including Plaintiff.

39. Hawaiian's exclusion of these employees from getting their jobs back is arbitrary and irrational, and constitutes further discrimination and retaliation.

40. Title VII prohibits employers from discriminating on the basis of religion, 42 U.S.C. § 2000e-2(a)(1), and requires employers to make reasonable accommodations for "all aspects of" an employee's religious beliefs, absent "undue hardship on the conduct of the employer's business," 42 U.S.C. § 2000e(j).

41. Hawaiian's acts and/or omissions violate Plaintiff's rights under Title VII willfully, wantonly, and/or with reckless disregard, by knowingly and falsely claiming, without proof and verification, that its business would suffer "undue hardship" if it had to made reasonable accommodations to the employees who sought religious and/or medical exemptions.

42. Hawaiian's acts and/or omissions violate Plaintiff's rights under Title VII willfully, wantonly, and/or with reckless disregard, by knowingly imposing a vaccine mandate for Plaintiff to get vaccinated or else get fired, giving Plaintiff "a

take it or leave it offer" despite Plaintiff's sincerely held religious objections.

43. Hawaiian's acts and/or omissions violate Plaintiff's rights under Title VII willfully, wantonly, and/or with reckless disregard, by knowingly allowing some unvaccinated employees (most, if not all, with less seniority than Plaintiff) to get their jobs back without penalty while others were told they had to reapply without credit for their seniority.

44. Title VII further forbids employers from retaliating against employees who attempt to exercise their statutory rights. 42 U.S.C. § 2000e-3(a).

45. Hawaiian's acts and/or omissions violate Plaintiff's rights under Title VII willfully, wantonly, and/or with reckless disregard, by knowingly terminating Plaintiff's employment and by knowingly refusing to allow Plaintiff and other terminated employees to get their jobs back.

## COUNT I
### *Religious Discrimination under Title VII Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., and Hawaii Revised Statutes § 378-2*

46. Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs as though fully alleged herein.

47. Plaintiff had a bona fide religious belief, which conflicts with Hawaiian's Vaccine Mandate.

48. Plaintiff informed Hawaiian of her religious beliefs and objections.

49. Defendants rejected Plaintiff's religious exemption request.

50. Defendants discharged, threatened, or otherwise subjected Plaintiff to an adverse employment action because of Plaintiff's inability to fulfill the job requirement.

51. Defendants failed and/or refused to initiate good faith efforts to accommodate reasonably Plaintiff's religious beliefs.

52. Defendants failed and/or refused to show that it could not reasonably accommodate Plaintiff without undue hardship.

53. Defendants' wrongful conduct caused Plaintiff to suffer damages.

54. Defendants' wrongful conduct was a substantial factor in causing Plaintiff's injury.

55. Defendants' wrongful conduct was willful, wanton, and/or reckless, in utter disregard for the health and welfare of Plaintiff.

56. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer loss of income, medical expenses, out-of-pocket expenses, severe depression and anxiety, loss of quality of life, and loss of enjoyment of life, and is entitled to recover back pay, front pay, compensatory damages, special damages, general damages, and punitive damages, including reasonable attorneys' fees and costs of suit, in such amounts as shall be

shown at a trial or hearing hereof.

## COUNT II
### *Negligence*
### *(Hawaii Common Law)*

57. Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs as though fully alleged herein.

58. Defendants owed a duty of care to Plaintiff.

59. Defendants breached its duty to Plaintiff.

60. Defendants' negligence caused Plaintiff to suffer damages.

61. Defendants' negligence was a substantial factor in causing Plaintiff's injury.

62. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer loss of income, medical expenses, out-of-pocket expenses, severe depression and anxiety, loss of quality of life, and loss of enjoyment of life, and is entitled to recover back pay, front pay, compensatory damages, special damages, general damages, and punitive damages, including reasonable attorneys' fees and costs of suit, in such amounts as shall be shown at a trial or hearing hereof.

## COUNT III
### *Gross Negligence*
### *(Hawaii Common Law)*

63. Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs as though fully alleged herein.

64. Defendants acted with reckless disregard of the need to use reasonable care, which was likely to cause foreseeable injury or harm to Plaintiff.

65. Defendants' gross negligence caused Plaintiff to suffer damages

66. Defendants' gross negligence was a substantial factor in causing Plaintiff's injury.

67. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer loss of income, medical expenses, out-of-pocket expenses, severe depression and anxiety, loss of quality of life, and loss of enjoyment of life, and is entitled to recover back pay, front pay, compensatory damages, special damages, general damages, and punitive damages, including reasonable attorneys' fees and costs of suit, in such amounts as shall be shown at a trial or hearing hereof.

## COUNT IV
### *Negligent Infliction of Emotional Distress*
### *(Hawaii Common Law)*

68. Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs as though fully alleged herein.

69. Defendants caused Plaintiff to suffer serious emotional distress or mental disturbance.

70. Defendants caused a person to suffer demonstrable physical injury and/or mental illness.

71. Defendants' wrongful conduct was a substantial factor in causing Plaintiff's injury.

72. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer loss of income, medical expenses, out-of-pocket expenses, severe depression and anxiety, loss of quality of life, and loss of enjoyment of life, and is entitled to recover back pay, front pay, compensatory damages, special damages, general damages, and punitive damages, including reasonable attorneys' fees and costs of suit, in such amounts as shall be shown at a trial or hearing hereof.

WHEREFORE, Plaintiff prays for Judgment in her favor and against Defendants, jointly and severally, as follows:

A. Reinstatement with full credit and benefits;

B. Back pay in an amount to be determined at a trial or hearing hereof;

C. Front pay in an amount to be determined at a trial or hearing hereof;

  D. Special damages in an amount to be determined at a trial or hearing hereof;

  E. General damages in an amount to be determined at a trial or hearing hereof;

  F. Compensatory damages in an amount to be determined at a trial or hearing hereof;

  G. Punitive damages in an amount to be determined at a trial or hearing hereof;

  H. Reasonable attorneys' fees and costs;

  I. Pre-judgment interest and post-judgment interest; and

  J. Any and all other relief as may be deemed just and equitable by the Court.

DATED:  Honolulu, Hawaii, November 10, 2022.

        */s/ Peter C. Hsieh*
        MICHAEL JAY GREEN
        PETER C. HSIEH

        Attorneys for Plaintiff
        SHANAH A. BRODY

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAIʻI

| | |
|---|---|
| SHANAH A. BRODY,<br><br>          Plaintiff,<br><br>    v.<br><br>HAWAIIAN AIRLINES, INC., and HAWAIIAN HOLDINGS, INC.,<br><br>          Defendants. | CIVIL NO. _____<br><br>DEMAND FOR JURY TRIAL |

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable of right by jury in this case, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: Honolulu, Hawaii, November 10, 2022.

　　　　　　　　　　　　　　　*/s/ Peter C. Hsieh*
　　　　　　　　　　　　　　　MICHAEL JAY GREEN
　　　　　　　　　　　　　　　PETER C. HSIEH

　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　SHANAH A. BRODY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| SHANAH A. BRODY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HAWAIIAN AIRLINES, INC., and HAWAIIAN HOLDINGS, INC.,<br><br>　　　　Defendants. | CIVIL NO. _____<br><br>SUMMONS |

**<u>SUMMONS</u>**

STATE OF HAWAIʻI

To the above-named Defendants:

　　　　You are hereby summoned and required to file with the court and serve upon Michael Jay Green and Peter C. Hsieh, Esq., attorneys for Plaintiff SHANAH A. BRODY, whose service address is Davies Pacific Center, 841 Bishop St., Suite 2201, Honolulu, Hawaiʻi 96813, an answer to the Complaint which is herewith served upon you, within 21 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

**WARNING TO DEFENDANT(S):** Failure to obey this summons may result in an entry of default and default judgment against the disobeying person or party.

**PROCESS SERVER:** You are prohibited from making personal delivery of this summons between 10:00 p.m. and 6:00 a.m. on premises not open to the public, unless a judge of the district or circuit courts permits, in writing on the summons, personal delivery during those hours.

DATED: Honolulu, Hawaiʻi, _____.

_____
CLERK OF THE ABOVE-ENTITLED COURT