IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SHANAH A. BRODY, | ) | CIV. NO. 22-00482 HG-WRP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HAWAIIAN AIRLINES, INC.; | ) | |
| HAWAIIAN HOLDINGS, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION (ECF No. 97)**

Plaintiff Shanah A. Brody was formerly employed as a flight attendant with Defendant Hawaiian Airlines, Inc.

In August 2021, Defendant Hawaiian Airlines, Inc. and its parent company, Defendant Hawaiian Holdings, Inc. ("Hawaiian Defendants") implemented a mandatory vaccination policy in the midst of the worldwide COVID-19 pandemic.

Plaintiff Brody requested to be exempt from the COVID-19 vaccination policy based on her Christian religious beliefs.

The Hawaiian Defendants denied Plaintiff's request for exemption from their vaccination policy.

Plaintiff filed suit against the Hawaiian Defendants

1

asserting claims of failure-to-accommodate her religious beliefs pursuant to Title VII of the Civil Rights Act of 1964 and Hawaii Revised Statutes § 378-2.

The Hawaiian Defendants argue that the Court lacks subject-matter jurisdiction to review Plaintiff's failure-to-accommodate claims.

The Hawaiian Defendants assert that Plaintiff's failure-to-accommodate claims require interpretation of the existing Collective Bargaining Agreement that applied to Plaintiff as a flight attendant.  The Hawaiian Defendants argue that the Court may not review such claims pursuant to the jurisdictional limitations set forth in the Railway Labor Act, 45 U.S.C. §§ 181-188 ("RLA").  The RLA requires claims that involve interpretation of collective bargaining agreements for transportation workers to be resolved only through the RLA's internal dispute-resolution processes.  <u>See</u> 45 U.S.C. § 184.

Defendants' Motion for Dismissal for Lack of Subject-Matter Jurisdiction (ECF No. 97) is **GRANTED.**

The First Amended Complaint (ECF No. 32) is **DISMISSED WITH PREJUDICE.**

<u>**PROCEDURAL HISTORY**</u>

On November 10, 2022, Plaintiff filed the Complaint.  (ECF No. 1).

2

On February 21, 2023, the case was reassigned from Judge Otake to Judge Gillmor. (ECF No. 17).

On June 16, 2023, Plaintiff filed the First Amended Complaint. (ECF No. 32).

On February 26, 2025, the Court approved the Parties' STIPULATION FOR DISMISSAL WITH PREJUDICE AS TO COUNT II (GROSS NEGLIGENCE) OF THE FIRST AMENDED COMPLAINT AND ORDER. (ECF No. 92).

On March 5, 2025, the Court held a Status Conference and Defendants requested leave of court to file a Motion to Dismiss pursuant to the Railway Labor Act, which was granted. (ECF No. 93).

On March 19, 2025, Defendants filed their Motion for Dismissal for Lack of Jurisdiction Pursuant to the Railway Labor Act. (ECF No. 97).

On April 2, 2025, Plaintiff filed her Opposition. (ECF No. 99).

The following day, on April 3, 2025, Plaintiff filed a Request for Judicial Notice of a brief filed by another attorney in a different case. (ECF No. 100).

On April 4, 2025, the Court held a Status Conference and denied Plaintiff's request to rely on a brief filed by another attorney in a different case but granted Plaintiff leave to file an amended opposition to the Defendants' Motion. (ECF No. 101).

On April 18, 2025, Plaintiff filed her Amended Opposition. (ECF No. 105).

The Court elects to decide the Motion without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

## BACKGROUND

Plaintiff Shanah A. Brody alleges in her Complaint that she was a flight attendant employed by Defendant Hawaiian Airlines, Inc., since February 11, 2000, and was based out of Honolulu, Hawaii. (Complaint at ¶ 30, ECF No. 32).

## Plaintiff's Collective Bargaining Agreement

Plaintiff Brody was subject to a Collective Bargaining Agreement entitled, "Agreement Between Hawaiian Airlines, Inc. and the Flight Attendants in the Service of Hawaiian Airlines, Inc. as Represented by the Association of Flight Attendants-CWA." (Declaration of Justin Doane, Vice President of Labor Relations for Hawaiian Airlines, Inc., at ¶¶ 3-7, ("Doane Decl."), ECF No. 97-2; Collective Bargaining Agreement attached as Ex. 1 to Def.'s Motion, ECF No. 97-10). The Collective Bargaining Agreement is commonly referred to as the "CBA." It was in effect from April 3, 2020 through April 5, 2025. (Id.)

The Collective Bargaining Agreement governed the working relationship between flight attendants, including Plaintiff, and

the Hawaiian Defendants.  (Doane Decl. at ¶ 8, ECF No. 97-2).
The CBA set forth the terms and conditions of the flight
attendants' employment.  (Id.)  The CBA provides detailed rules
governing the performance of flight attendant duties including
scheduling, route assignments, seniority, benefits, and
retirement.  (Id. at ¶ 11).

The seniority and bidding provisions of the CBA cover all
Hawaiian flight attendants' work assignment routes, schedules
(including locations, dates, duration, and layovers), and
aircraft types.  (Id. at ¶ 9; CBA at Section 8 on "Reserves,"
Section 9 on "Seniority," Section 10 on "Preparation, Bidding and
Awarding of Flight Schedules Under PBS," and Section 11 on
"Scheduling Policy," attached as Ex. 1 to Def.'s Motion, ECF No.
97-10).

Seniority and bidding procedures also affect work
conditions, tasks, pay rates, and compensation.  (CBA at Section
3 on "Compensation," and Section 7 on "Hours of Service,"
attached as Ex. 1 to Def.'s Motion, ECF No. 97-10).

The Collective Bargaining Agreement contains a provision
mandating that any disputes concerning interpretation or
application of any of the terms of the CBA be resolved through
arbitration by the System Board of Adjustment whose decision is
final and binding on the parties as provided by the Railway Labor
Act, 45 U.S.C. § 151 et seq.  (CBA at 1-15, attached as Ex. 1 to

Def.'s Motion, ECF No. 97-10; Doane Decl. at ¶ 17, ECF No. 97-2).

**The Hawaiian Defendants' Vaccination Policy**

According to the First Amended Complaint, in August 2021, in the midst of the worldwide COVID-19 pandemic, Defendants Hawaiian Airlines, Inc. and its parent company Hawaiian Holdings, Inc. ("Hawaiian Defendants") announced a vaccination policy. (First Amended Complaint at ¶ 20, ECF No. 32). Plaintiff alleges that the Hawaiian Defendants required all of their employees to receive a COVID-19 vaccine or receive approval of exemptions for religious or medical reasons. (Id. at ¶¶ 20, 27-29). The First Amended Complaint asserts that the Hawaiian Defendants permitted unvaccinated employees to work under a Transition Period Testing Program from November 1, 2021 until January 4, 2022. (Id. at ¶ 20).

Plaintiff claims that after January 4, 2022, unvaccinated employees were offered 12 months of leave without pay when the Hawaiian Defendants ended the testing program as an accommodation. (Id. at ¶¶ 22-24, 29).

**Plaintiff's Religious Accommodations Request For Exemption From The Vaccination Policy**

Plaintiff alleges that on September 30, 2021, she submitted a request for exemption from the Hawaiian Defendants' vaccination policy based on her religious beliefs. (Id. at ¶ 31).

6

The First Amended Complaint alleges that on October 14, 2021, the Hawaiian Defendants denied Plaintiff's request for religious exemption from the vaccine mandate. (<u>Id.</u> at ¶ 32).

Plaintiff alleges that she "refused to apply for the 12-Month Unpaid [Leave of Absence.]" (<u>Id.</u> at ¶ 33).

According to the First Amended Complaint, on December 14, 2021, the Hawaiian Defendants terminated Plaintiff's employment. (<u>Id.</u> at ¶ 34).

## **Plaintiff's Causes of Action**

On June 16, 2023, Plaintiff filed the First Amended Complaint, asserting the following causes of action:

**COUNT I:** Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., for **Religious Discrimination** Based On **Failure-To-Accommodate**

and

Violation of Hawaii Revised Statutes § 378-2, for **Religious Discrimination** Based on **Failure-To-Accommodate**

**COUNT II:** Gross Negligence.

The Parties stipulated to dismiss Count II with Prejudice on February 26, 2025.  (ECF No. 92).

The only remaining causes of action are Plaintiff's failure-to-accommodate claims pursuant to Title VII of the Civil Rights Act of 1964 and pursuant to Haw. Rev. Stat. § 378-2.

**The Hawaiian Defendants' Motion to Dismiss Pursuant To the
Railway Labor Act**

The Hawaiian Defendants have filed a Motion for Dismissal of
the remaining causes of action for lack of subject-matter
jurisdiction.

The Hawaiian Defendants' Motion argues that the Court lacks
subject-matter jurisdiction to review Plaintiff's failure-to-
accommodate causes of action because such claims are precluded
from court review pursuant to the Railroad Labor Act, 45 U.S.C. §
151, et seq.

## STANDARD OF REVIEW

A plaintiff has the burden of proving that subject-matter
jurisdiction exists.  Thornhill Publ'g Co., Inc. v. Gen. Tel. &
Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  The Court must
dismiss any claims for which it lacks subject-matter
jurisdiction.  See Fed. R. Civ. P. 12(b)(1); Leeson v.
Transamerica Disability Income Plan, 671 F.3d 969, 975 (9th Cir.
2012).

A challenge to the Court's subject-matter jurisdiction may
be "facial or factual."  Safe Air for Everyone v. Meyer, 373 F.3d
1035, 1039 (9th Cir. 2004).  In a facial attack, the party
challenging jurisdiction argues that the allegations contained in
a complaint are insufficient "on their face" to invoke federal

8

jurisdiction.  Id.  A facial challenge therefore mirrors a traditional motion to dismiss analysis.  The Court must take all allegations contained in the pleading "to be true and draw all reasonable inferences in [its] favor."  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

In a factual attack, the party challenging jurisdiction argues that the facts in the case, notwithstanding the allegations in the Complaint, divest the Court of subject-matter jurisdiction.  See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  No presumptive truthfulness attaches to the Complaint's allegations.  Id.  The party challenging jurisdiction presents "affidavits or other evidence properly brought before the court" indicating that subject-matter jurisdiction is lacking.  Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  The burden then shifts to "the party opposing the motion [to] furnish affidavits or other evidence to satisfy its burden of establishing subject matter jurisdiction."  Id.  Failure to present suitable evidence establishing subject-matter jurisdiction necessitates dismissal.  Moore v. Maricopa Cnty. Sheriff's Office, 657 F.3d 890, 895 (9th Cir. 2011).

A motion challenging the district court's jurisdiction pursuant to the Railway Labor Act is properly considered as a motion bringing a factual attack on subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  Soper v. United Airlines,

9

Inc., 2024 WL 4800082, *2 (C.D. Cal. Sept. 4, 2024).

The Court may review the Collective Bargaining Agreement and other relevant evidence to determine whether it has subject-matter jurisdiction pursuant to the Railway Labor Act.  Hinant v. American Airlines, Inc., 2024 WL 4988391, *3 (D. Ariz. Dec. 5, 2024).

## ANALYSIS

## I.  Defendants' Motion To Dismiss For Lack Of Subject-Matter Jurisdiction Is Timely

As an initial matter, Plaintiff argues that Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction pursuant to the Railway Labor Act is "untimely."  (Pl.'s Amended Opposition at p. 1, ECF No. 105).

The nature of subject-matter jurisdiction is set forth by the United States Supreme Court in Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).  Defenses based on lack of subject-matter jurisdiction can be raised at any time, including after trial and on appeal, and can never be waived or forfeited by the parties. Id.

The Court is obligated to consider motions to dismiss for lack of subject-matter jurisdiction, including motions based on preclusion or preemption pursuant to the Railway Labor Act, whenever the issue is raised.  Pearson v. Northwest Airlines, Inc., 659 F.Supp.2d 1084, 1088 n.3 (C.D. Cal. 2009).  Courts have

an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.  Ruhrgas AG v. Marathon Oil, Co., 526 U.S. 574, 583 (1999).

## II.  The Railway Labor Act

The Railway Labor Act ("RLA"), 45, U.S.C. § 151, et seq., was enacted to provide a comprehensive framework for resolving labor disputes involving transportation carriers.

In 1936, the Railway Labor Act was extended to cover the airline industry.  Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 248 (1994); see 45 U.S.C. § 181.

The RLA addresses three kinds of labor disputes:

(1)  major disputes;

(2)  minor disputes; and

(3)  representation disputes.

Haralson v. United Airlines, Inc., 224 F.Supp.3d 928, 934 (N.D. Cal. 2016).

First, "major disputes" relate to the formation of collective bargaining agreements or the efforts of the parties to secure rights under the collective bargaining process.  Consol. Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 302 (1989).  Major disputes look to the acquisition of rights for the future, and they do not involve disputes about rights that were

11

vested in the past.  Id.  Major disputes require the parties to undergo lengthy bargaining, mediation, and arbitration processes. Id.

Second, "minor disputes" seek to enforce existing contractual rights as embodied in an existing collective bargaining agreement.  Aircraft Serv. Int'l, Inc. v. Int'l Bhd. of Teamsters, 779 F.3d 1069, 1081 (9th Cir. 2015) (en banc). Minor disputes require the existence of a collective bargaining agreement already in effect and involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation."  Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 723 (1945).

The RLA mandates that minor disputes are subject to an exclusive dispute resolution mechanism for the prompt and orderly settlement of such claims.  Norris, 512 U.S. at 252.

A distinguishing feature of a minor dispute from a major dispute is that a minor dispute requires interpreting an existing collective bargaining agreement whereas a major dispute challenges an attempt to form or secure collective bargaining rights.  Id. at 265.  Courts lack subject-matter jurisdiction to adjudicate minor disputes concerning an existing collective bargaining agreement.  Id.

Third, the RLA also covers "representation disputes" which concern the definition of a particular bargaining unit and

selection of the employee representative for collective bargaining.  Herrera v. Command Sec. Corp., 837 F.3d 979, 989 (9th Cir. 2016).  Representation disputes are within the exclusive jurisdiction of the National Mediation Board and courts also lack jurisdiction over such claims.  Id.

## III. Courts Lack Subject-Matter Jurisdiction To Review Minor Disputes Pursuant To The Railway Labor Act

Minor disputes between an employee and a transportation carrier must be resolved through the RLA's non-judicial, procedural mechanisms rather than through a lawsuit.  See 45 U.S.C. § 184.  Courts lack subject-matter jurisdiction over minor disputes within the meaning of the RLA.  Norris, 512 U.S. at 253.

### A.   Two-Step Test For Preclusion Of Minor Disputes

Courts in the Ninth Circuit apply a two-step test to evaluate if a plaintiff's claim is preempted or precluded from court review by the RLA.  Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union, 23 F.4th 836, 841-42 (9th Cir. 2022).

First, the court examines if the plaintiff's claim seeks purely to vindicate a right or duty created by the collective bargaining agreement itself.  Id. at 843.  If so, the claim is preempted or precluded from review.  If not, the court proceeds to the second step.

<u>Second</u>, even if the claim does not seek to vindicate a right created by the CBA, the court evaluates if the plaintiff's claim is substantially dependant on analysis and interpretation of the CBA.  <u>Id.</u>  If so, the claim is preempted or precluded from review.

**B.   Plaintiff's Claims That Require Interpretation Of An Existing Collective Bargaining Agreement Are Preempted Or Precluded From Court Review Under The RLA**

Under step two, a court is without subject-matter jurisdiction to review a plaintiff's claim that concerns interpretation of the "duties and rights created or defined by the collective bargaining agreement." <u>Alaska Airlines, Inc. v. Schurke</u>, 898 F.3d 904, 919 (9th Cir. 2018) (en banc) (quoting <u>Norris</u>, 512 U.S. at 258).  Such disputes must be resolved only through the RLA mechanisms, and not by a court.  <u>Id.</u>

The RLA exclusivity provision was enacted to ensure that disputes regarding existing collective bargaining agreements are governed by a uniform set of principles rather than conflicting substantive interpretations under competing legal systems in the federal and state courts.  <u>Schurke</u>, 898 F.3d at 919.

**C.   Disputes That Do Not Require Interpretation Of the Existing Collective Bargaining Agreement Are Not Preempted Or Precluded From Court Review**

Consultation of the collective bargaining agreement alone is

14

insufficient to trigger application of the RLA.  Livadas v.
Bradshaw, 512 U.S. 107, 124 (1994).  In order to qualify as a
minor dispute pursuant to the RLA, the dispute must require
interpretation of the terms of a collective bargaining agreement.
Norris, 512 U.S. at 265.

The court is not divested of jurisdiction pursuant to the
RLA if there is no disagreement as to the meaning of all of the
terms of the collective bargaining agreement.  Schurke, 898 F.3d
at 927.  "Reliance on and reference to CBA-established or CBA-
defined terms of employment do not make for a CBA dispute if
there is no disagreement about the meaning or application of any
relevant CBA-covered terms of employment."  Id.

For example, a claim for damages dependent on a CBA's
undisputed wage provisions are not preempted by the RLA because
the claim is not dependent on interpretation of a CBA term.
Livadas, 512 U.S. at 125.

## IV.  Plaintiff's Failure-To-Accommodate Claims Require Interpretation Of The Existing Collective Bargaining Agreement

The Hawaiian Defendants assert that Plaintiff's failure-to-
accommodate claim pursuant to Title VII of the Civil Rights Act
is precluded from review because it is a "minor dispute" about
the terms of the existing collective bargaining agreement.
Similarly, the Hawaiian Defendants assert that Plaintiff's

failure-to-accommodate claim pursuant to Hawaii state law under
Haw. Rev. Stat. § 378-2 is preempted by the RLA.[1]

The Hawaiian Defendants argue that Plaintiff's claims
regarding the availability of accommodations from the vaccine
mandate require interpretation of various provisions of the
existing CBA.

### A. Plaintiff's Requested Accommodation Requires Interpretation Of The Seniority, Bidding, And Assignment Provisions Of The Collective Bargaining Agreement

The United States Supreme Court ruled in <u>Trans World
Airlines, Inc. v. Hardison</u>, 432 U.S. 63, 67 (1977), that it was
an undue hardship to force an employer to violate an existing
collective bargaining agreement in order to provide an employee
with her requested accommodation.  See <u>Groff v. DeJoy</u>, 600 U.S.
447, 470 (2023) (clarifying that undue hardship requires more
than de minimis cost); 29 C.F.R. § 1605.2(e)(2) (stating that in
addition to cost, "Undue hardship would also be shown where a
variance from a bona fide seniority system is necessary in order
to accommodate an employee's religious practices when doing so

---

[1] Failure-to-accommodate claims on the basis of religion
utilize the same standard and framework pursuant to both federal
law under Title VII and Hawaii state law under Haw. Rev. Stat. §
378-2.  <u>Cruz v. Kaiser Foundation Hospitals</u>,   F.Supp.3d   ,
2025 WL 951099, *3-*4 (D. Haw. Mar. 28, 2025); <u>see Victorino v.
Hawaiian Airlines, Inc.</u>, 2024 WL 5108276, *5 (D. Haw. Dec. 12,
2024).

would deny another employee his or her job or shift preference
guaranteed by that system").

The Hawaiian Defendants assert that granting Plaintiff's
requested accommodation to fly unvaccinated or to fly only on
specific routes would have forced it to violate the CBA's terms,
including its seniority system.  The Hawaiian Defendants cite
numerous provisions of the Collective Bargaining Agreement in
support of their position that Plaintiff's accommodation request
requires interpretation of the existing Collective Bargaining
Agreement.  The Hawaiian Defendants argue that accommodating
Plaintiff would have substantially disrupted not only its
business operations but would have violated numerous terms of the
existing CBA, including its seniority provisions, process bidding
for routes, and scheduling of flight attendants.  See Hardison,
432 U.S. at 79; 29 C.F.R. § 1605.2(e)(2).

In 2021, Plaintiff Brody was a reserve flight attendant who
primarily flew in the Defendants' International Operation.
(Deposition of Shanah A. Brody at p. 19, ("Brody Depo.") attached
to Def.'s Motion, ECF No. 97-16).  Plaintiff testified in her
deposition that she flew multiple international routes from
Honolulu, and that she flew to Sydney, Australia, "once a week."
(Id.)  Plaintiff explained that in approximately 2017 or 2018 she
"accrued enough seniority to successfully bid on longer routes
such as to Sydney so that [she was] flying to Sydney about once a

17

week." (Id. at p. 20). Plaintiff continued to regularly fly the route to Sydney "until COVID." (Id. at pp. 20-21).

A reserve flight attendant in the Defendants' International Operation is not awarded a particular route but is available to be assigned to fly anywhere in the International Operation. (Doane Decl. at ¶ 15-16, 19-23, ECF No. 97-2).

The Hawaiian Defendants assert that, according to their interpretation of the CBA, the assignment of flights to a reserve flight attendant is done in seniority order, taking into consideration flight attendant preferences. (Id. at ¶ 16).

The Hawaiian Defendants assert that allowing Plaintiff to fly unvaccinated, as Plaintiff requested, would have conflicted with the seniority-based bidding process governing international routes for reserve flight attendants set forth in the CBA. (CBA at Section 9B-3 at p. 9-1, attached as Ex. 1 to Def.'s Motion, ECF No. 97-10; Doane Decl. at ¶¶ 20-23, ECF No. 97-2). The Hawaiian Defendants point to the various provisions of the CBA governing seniority and route bidding in support of their position. (CBA at Section 8 on "Reserves," Section 9 on "Seniority," Section 10 on "Preparation, Bidding and Awarding of Flight Schedules Under PBS," and Section 11 on "Scheduling Policy," see also Section 3 on "Compensation," and Section 7 on "Hours of Service," attached as Ex. 1 to Def.'s Motion, ECF No. 97-10).

18

The Hawaiian Defendants argue that complications in assignments arose on the route from Honolulu to Sydney, Australia, during the COVID-19 pandemic.  The Australian Government in New South Wales, where Sydney is located, implemented restrictions for unvaccinated flight crew arriving in the jurisdiction.  (See Public Health (COVID-19 Air Transportation Quarantine) Order (No 4) 2021, issued by the New South Wales Government, attached as Ex. 11 to the Declaration of Kathleen Mainerd, Senior Manager, South Pacific, Airport Operations for Defendant Hawaiian Airlines, Inc., ECF No. 97-20).

The Australian restrictions included fines for employers whose employees failed to follow protocols.  (Id.; Declaration of Jon Baron, Director, In-Flight Policies, Procedures & Compliance for Defendant Hawaiian Airlines, Inc., at ¶¶ 3-4, attached to Def.'s Motion, ECF No. 97-6).

The Hawaiian Defendants assert that they elected to place only vaccinated flight attendants on the route from Honolulu to Sydney to avoid penalties and/or fines to unvaccinated employees for violating the Australian regulations.  (Mainerd Declaration at ¶¶ 3-5, attached to Def.'s Motion, ECF No. 97-5).

The Hawaiian Defendants explain that because Plaintiff was a reserve flight attendant who flew international routes, including weekly to Sydney, Australia, accommodating Plaintiff's request would have displaced the bids of other Hawaiian flight attendants

and impinged on their seniority rights in violation of the terms
of the CBA.

Plaintiff disagrees with the Defendants' interpretation of
the terms of the CBA.  Plaintiff relies on her own interpretation
of the terms of the CBA to argue that granting her accommodation
request and her schedule preferences would not have violated the
CBA terms.  Specifically, Plaintiff claims that "she had enough
seniority to bid on routes that exclude Sydney without impinging
on the rights of other flight attendants and could thus be
accommodated without causing Defendant undue hardship."  (Pl.'s
Amended Opp. at p. 18, ECF No. 105).

The question of whether Plaintiff's requested accommodation
would have been permitted by the CBA is the exact type of dispute
that the Court lacks subject-matter jurisdiction to review.  The
dispute about whether the CBA would have allowed the Hawaiian
Defendants to schedule unvaccinated flight attendants on the
route to Sydney where the employees could have been subject to
legal consequences and/or fines imposed by the Australian
government is also unclear.

There is also a question pursuant to the terms of the CBA if
the Hawaiian Defendants could have granted an accommodation to
Plaintiff alone or whether they would have been required to
provide the same accommodation to the other 268 flight attendants
who requested exemption from the vaccine policy.  (Declaration of

Willard Jackson, Senior Director, Leave Management for Defendant
Hawaiian Airlines, Inc. at ¶ 10, attached to Def.'s Motion, ECF
No. 97-3).  The disputed questions concerning seniority and the
bidding process for other flight attendants are central to
Plaintiff's failure-to-accommodate claims.  The disputed question
of whether the CBA would have required the Hawaiian Defendants to
provide identical accommodations to all 268 flight attendants
requesting exemption is inextricably intertwined with the
Hawaiian Defendants' undue hardship defense.  These crucial
questions hinge on interpretation of the CBA's terms and must be
decided by an arbitrator.

Disagreements about the interpretation, scope, or
applicability of specific terms of an existing CBA are the types
of disputes subject to preclusion and preemption pursuant to the
RLA.  Hinant v. American Airlines, Inc., 2024 WL 4988391, at *3
(D. Ariz. Dec. 4, 2024) (citing Int'l Ass'n of Sheet Metal Air,
Rail, & Transp. Workers v. Union Pac. R.R. Co., 2019 WL 6499212
(C.D. Cal. July 25, 2019); Pritchard v. American Airlines, Inc.,
708 F.Supp.3d 861, 867 (N.D. Tex. 2023)).

These disputes about the CBA are necessary to resolve
Plaintiff's failure-to-accommodate claims because they directly
impact the evaluation of the reasonable accommodations available
and the undue hardship defense.  Hardison, 432 U.S. at 79; 29
C.F.R. § 1605.2(e)(2).

21

**B.   Plaintiff's Claims Are Distinguishable From Intentional Discrimination Causes Of Action**

Plaintiff primarily relies on cases that have ruled that intentional discrimination causes of action are generally not precluded or preempted by the RLA.  (Pl.'s Amended Opp. at p. 12, ECF No. 105).

In Felt v. Atchison, Topeka & Santa Fe Ry. Co., 60 F.3d 1416, 1420 (9th Cir. 1995), as a matter of first impression, the Ninth Circuit Court of Appeals ruled that Title VII religious discrimination claims are generally not precluded by the RLA because these types of claims exist entirely independent of the collective bargaining agreement and usually do not require interpretation of CBA terms.  See also Saridakis v. United Airlines, 166 F.3d 1272, 1277 (9th Cir. 1999) (finding federal disability discrimination claim did not require interpretation of CBA).

Here, Plaintiff's causes of action in Counts I, however, are not intentional discrimination claims.  Rather, Count I is premised on Plaintiff's argument that she believes the Defendants could have provided her with her requested accommodation within the confines of the existing Collective Bargaining Agreement. Plaintiff alleges that the Defendants denied her requested accommodation and instead offered the accommodation of leave without pay, which she claims was insufficient.  (First Amended

22

Complaint at ¶¶ 28, 32-33, 41-46, ECF No. 32).  Plaintiff claims
that she elected to be terminated in lieu of the accommodation
proposed by the Defendants.  (Id. at ¶ 33-34).

Plaintiff has not asserted any direct or intentional
discrimination claim, but instead has brought failure-to-
accommodate claims where she has placed the interpretation of
multiple provisions of the Collective Bargaining Agreement in
dispute.  See Sjoberg v. United Airlines, Inc., 2024 WL 4219736,
at *4 (S.D. Tex. Sept. 17, 2024) (quoting Pavlova v. United
Airlines, Inc., 2024 WL 1514962, at *3 (S.D. Tex. Mar. 5, 2024),
holding that the RLA bars court review of discrimination claims
where "Plaintiff puts interpretations of provisions of the
[collective bargaining agreement] at the center of this
dispute").

The same analysis applies to Plaintiff's Hawaii state law
failure-to-accommodate claim under Haw. Rev. Stat. § 378-2, which
is legally indistinguishable from her Title VII failure-to-
accommodate claim.  Victorino, 2024 WL 5108276, at *3.
Plaintiff's Haw. Rev. Stat. § 378-2 failure-to-accommodate claim
also requires interpretation of the terms of the existing CBA.
Contra Norris, 512 U.S. at 264-66 (holding that state law claims
that are independent of the collective bargaining agreement and
do not involve interpretation of the CBA's terms are not
preempted by the RLA).  Plaintiff's state law claim is preempted

23

pursuant to the RLA because it requires interpretation and application of disputed terms in the CBA. Edelman v. Western Airlines, Inc., 892 F.2d 839, 845 (9th Cir. 1989) (finding state law claims were preempted by the RLA because they were "inextricably intertwined" with the interpretation of the CBA); Alvarez v. Transitamerica Services, Inc., 2019 WL 144592, *4-*6 (N.D. Cal. Jan. 9, 2019).

The questions here concerning the availability of the Plaintiff's requested accommodations based on disputed interpretations of the seniority, bidding, reserves, and scheduling provisions distinguishes Plaintiff's causes of action from Felt and Norris.

### C.   Plaintiff's Failure-To-Accommodate Claims Require More Than Mere Reference To The Terms Of The Collective Bargaining Agreement

Courts have ruled that a plaintiff's claim is not precluded or preempted by the RLA when the court need simply review a term in a CBA or read the provisions of the CBA to determine its basic provisions. Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1060 (9th Cir. 2007); Angeles v. U.S. Airways, Inc., 2013 WL 622032, *6 (N.D. Cal. Feb. 19, 2013); but see McKinley v. Southwest Airlines Co., 680 Fed. Appx. 522, 524-25 (9th Cir. 2017) (finding rate of overtime pay required interpretation of the CBA because plaintiff disputed the amount due under the terms of the CBA).

24

Here, Plaintiff's claims do not merely require the Court to
look to the CBA or reference its terms.  Instead, Plaintiff's
failure-to-accommodate claims require interpretation of the
complex, collective bargaining agreement and various provisions
governing scheduling, bidding, and seniority for flight
attendants.  Plaintiff's failure-to-accommodate claims are
"inextricably intertwined" with the CBA's terms.  Edelman, 892
F.2d at 845.

Plaintiff's interpretation of the CBA relies on her own
beliefs as to available accommodations based on past practice,
usage, and custom of the parties regarding the CBA.

In Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n, 491
U.S. 299, 311 (1989), the United States Supreme Court ruled that
interpretation of collective bargaining agreements often depend
on practice, usage, and custom.  Interpretation of CBA terms
based on practice, usage, and custom is one of the primary
reasons that the RLA dictates that CBA interpretation must be
before a specialized arbitrator and not the court system.

The United States Supreme Court ruled that these types of
disputes cannot be reviewed by the courts because the RLA
precludes review over claims where the parties disagree about the
effect of past practices on the interpretation of CBA terms.
Consol. Rail Corp. 49 U.S. at 320 (holding that the court lacked
jurisdiction to review the employees' claims because there were

disputes about the effect of the employer's past practices
regarding drug testing and whether its drug testing practices
were justified under the terms of the CBA).

    Just as here, the RLA precludes review of Plaintiff's
failure-to-accommodate claims given the disputes regarding the
effect that past practice, usage, and custom may have on the
terms of the existing CBA.  Id.; see also Hinant, 2024 WL
4988391, at *3; Flanary v. USAIR, Inc., 1997 WL 364090, *3 (S.D.
Cal. Mar. 27, 1997) (finding the flight attendant's claim was
preempted under the RLA because of questions about the effect of
practice, custom, and usage on the existing collective bargaining
agreement, even though no specific section of the CBA directly
addressed plaintiff's claim).

### D.    Plaintiff's Failure-To-Accommodate Claims In The Context Of The COVID-19 Pandemic

    The Sixth Circuit Court of Appeals recently ruled, on very
similar facts, that a group of pilots' failure-to-accommodate
discrimination claims were precluded from court review pursuant
to the RLA.

    In Odell v. Kalitta Air, LLC, 107 F.4th 523, 532 (6th Cir.
2024), the plaintiff pilots elected not to vaccinate for COVID-19
and requested exemptions from their employer air carrier's
mandatory vaccine requirement imposed during the global pandemic.
Id. at 531.  The plaintiff pilots proposed an accommodation of

limiting their flying routes to countries that did not impose
vaccine requirements.  Id.  The employer denied their requests
for exemption and accommodations.  Id.

The pilots sued their air carrier employer, asserting
various claims including Title VII and ADA claims for failure-to-
accommodate the unvaccinated pilots based on their religious
beliefs and their alleged disabilities.

The district court ruled that the pilot's failure-to-
accommodate claims were precluded from court review pursuant to
the RLA.  Id.

On appeal, the Sixth Circuit Court of Appeals affirmed.  Id.
at 531-32.  The Appellate Court ruled that the plaintiff's
failure-to-accomodate claims required interpretations of the
existing collective bargaining agreement, specifically with
respect to seniority, bidding, and scheduling of the pilots'
routes.  Id.  The Sixth Circuit Court of Appeals ruled that the
courts lacked subject-matter jurisdiction over the pilots'
failure-to-accommodate claims and that such claims were precluded
from review pursuant to the RLA.  Id. at 531-32.

Here, Plaintiff requested that the Hawaiian Defendants allow
her to fly unvaccinated or only on specified routes.  She argues
that her requested accommodation would not violate the terms of
the CBA and would not have interfered with seniority or bidding
on the route to Sydney.

Plaintiff's failure-to-accommodate claims require interpretation of the existing CBA with respect to seniority, bidding, and scheduling.  The question of what accommodations were available pursuant to the terms of the existing CBA in the midst of the COVID-19 pandemic are precluded from court review pursuant to the RLA.  Such claims require interpretation of existing terms in the collective bargaining agreement before an arbitrator.

Other District Courts have ruled that similar failure-to-accommodate claims against transportation carriers in the context of the COVID-19 pandemic are precluded from court review.  The District Courts have found that plaintiffs' failure-to-accommodate claims implicate CBA provisions regarding scheduling, bidding, routes, and compensation.  Such claims require interpretation of collective bargaining agreements for which the courts lack subject-matter jurisdiction.  Whitford v. Nat'l R.R. Passenger Corp., 2024 WL 4216050, at *6 (W.D.N.Y. Sept. 17, 2024); Grindling v. Cathay Pacific Airways, Ltd., 2024 WL 4164234, at *3 (N.D. Ill. Sept. 11, 2024); see also Saliba v. American Airlines, Inc., 2022 WL 4131485, at *5 (D. Ariz. Sept. 12, 2022).

The Court agrees with the reasoning in Odell, 107 F.4th at 532, Whitford, 2024 WL 4216050, at *6 , and Grindling, 2024 WL 4164234, at *3.  Plaintiff's failure-to-accommodate claims are

precluded and preempted from court review pursuant to the RLA.

## V.    Plaintiff's Request For Jurisdictional Discovery And For Leave To Amend The December 22, 2022 Complaint

### A.    Jurisdictional Discovery Is Not Warranted

In Plaintiff's Amended Opposition, she requests jurisdictional discovery for the first time, despite the discovery deadline being closed.  (Pl.'s Amended Opp. at pp. 19-20, ECF No. 105; see Minute Order, ECF No. 91).

Plaintiff has not established good cause to amend the scheduling order to allow for additional discovery.  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992) (explaining that good cause is required to amend the Rule 16 scheduling order).  Jurisdictional discovery is not warranted. Although the Court can evaluate evidence in a factual attack to subject-matter jurisdiction, the Court's evaluation is not one that requires the Court to resolve disputes concerning the interpretation of the existing Collective Bargaining Agreement. To the contrary, the Ninth Circuit Court of Appeals has explained that it is not for the courts to determine whether a claim actually violates a term of the collective bargaining agreement. The task of the Court is merely to determine if interpretation of the CBA is required to adjudicate Plaintiff's claim or whether a provision in a CBA arguably disposes of the Plaintiff's claim. Schurke, 898 F.3d at 924.  It is not for the Court to decide if

29

Plaintiff's requested accommodation was reasonable or if the
Hawaiian Defendants would have faced undue hardship if they would
have provided Plaintiff with her requested accommodation.

There is no basis for jurisdictional discovery as it would
not alter the Court's finding that based on the allegations in
the Complaint and the Court's review of the existing CBA,
Plaintiff's failure-to-accommodate claims in Count I are
precluded from Court review and must be heard pursuant to the
dispute resolution terms in the RLA and the existing CBA.

**B.    Leave To Amend The Complaint Is Not Warranted**

In Plaintiff's Opposition, she also requests leave to amend
the June 16, 2023 First Amended Complaint to add a claim for
intentional discrimination.  (Pl.'s Amended Opp. at p. 19, ECF
No. 105).

Plaintiff's request for leave to amend the First Amended
Complaint is untimely.  The original Complaint in this case was
filed two and a half years ago on November 10, 2022.  The First
Amended Complaint was filed nearly two years ago on June 16,
2023.  The deadline for seeking amendment to the Complaint closed
more than a year ago on February 29, 2024.  The Rule 16
Scheduling Order has been altered numerous times and Plaintiff
never sought to reopen the deadline to amend the Complaint.

As explained earlier, Plaintiff characterizes Defendants'

RLA Motion as "untimely," but defenses based on lack of subject-matter jurisdiction, such as preclusion under the RLA, can be raised at any time and can never be waived or forfeited by the parties.  See Arbaugh, 546 U.S. at 514 (2006); Pearson, 659 F.Supp.2d at 1088 n.3.

Plaintiff has not established good cause required to amend the scheduling order to assert a new cause of action after more than two and a half years of litigation.  Johnson, 975 F.2d at 608 (explaining that a plaintiff must first establish good cause pursuant to Fed. R. Civ. P. 16(b) to amend the scheduling order prior to seeking amendment of a pleading pursuant to Fed. R. Civ. P. 15(a)).

//

//

//

//

//

//

//

//

//

//

//

//

## CONCLUSION

Defendants' Motion for Dismissal for Lack of Subject-Matter Jurisdiction (ECF No. 97) is **GRANTED.**

Plaintiff's request for jurisdictional discovery is **DENIED.**

Plaintiff's request for leave to amend the June 16, 2023 Complaint (ECF No. 32) is **DENIED.**

There are no remaining claims or Parties in this action.

The First Amended Complaint (ECF No. 32) is **DISMISSED WITH PREJUDICE.**

The Clerk of Court is **ORDERED** to enter Judgment in favor of Defendants and to **CLOSE THE CASE.**

IT IS SO ORDERED.

DATED: May 2, 2025, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

Shanah A. Brody vs. Hawaiian Airlines, Inc.; Hawaiian Holdings, Inc., 22-cv-00482 HG-WRP; **ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION (ECF No. 97)**